**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SONYA HAYTHE, DOUGLAS SMITH, and PETER COFFIN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>　　　　　　　　　Defendant. | Case No. 1:22-cv-3509-VEC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs Sonya Haythe, Douglas Smith, and Peter Coffin ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Samsung Electronics America, Inc. ("Defendant" or "Samsung") for the manufacture, marketing, and sale of certain models of televisions that were represented as having a "Motion Rate" of 120 Hz, when in fact the televisions at issue have hardware incapable of supporting a 120 Hz refresh rate, thereby rendering Defendant's Televisions hardware capable of achieving an actual refresh rate of only 60 Hz. Plaintiffs make the following allegations based upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including the investigation conducted by their attorneys.

<u>**NATURE OF THE ACTION**</u>

1.　　　This is a class action on behalf of purchasers of several models of Defendant's televisions[1] in the United States.

---

[1] The specific television models at issue are the TU7000, AU8000, NU7100, NU6900, NU6950, QNQ60TAFXZA, and any substantially similar television manufactured by Defendant that represents to have a "Motion Rate" of 120 Hz but only has an actual refresh rate of 60 Hz, as discussed below (collectively, the "Televisions").

2.      Samsung sells several models of televisions that prominently claim to have a "Motion Rate" of 120 Hz.  Based on this representation, reasonable consumers understand and are led to believe that the Televisions' hardware is capable of producing a refresh rate of 120 Hz.

3.      However, contrary to Defendant's representations and warranties, the Televisions' hardware is incapable of producing a refresh rate of 120 Hz.  Instead, the Motion Rate is double the actual refresh rate, and each of the Televisions' hardware is only capable of producing an actual refresh rate of only 60 Hz.

4.      Had Defendant disclosed that the Televisions' hardware was only capable of producing a refresh rate of 60 Hz, Plaintiffs and members of the Classes would not have purchased the Televisions or would have paid less for the Televisions than they did.

5.      Plaintiffs and members of the Classes were accordingly injured by the price premium they paid for the Televisions due to Defendant's misrepresentation that the Televisions had a "Motion Rate" of 120 Hz, when in fact the Televisions' hardware was only capable of producing a refresh rate of 60 Hz.

6.      Plaintiffs bring this action individually and on behalf of a class of all other similarly situated purchasers to recover damages and restitution for: (i) violation of New York's General Business Law ("GBL") § 349; (ii) violation of New York's GBL § 350; (iii) violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*; (iv) breach of express warranty; (v) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.; (vi) unjust enrichment; (vii) fraud; and (viii) violation of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, §§ 1 *et seq*.

## PARTIES

7.      Plaintiff Sonya Haythe is, and at all times relevant to this action has been, a domiciliary of New York, New York and a citizen of New York.  In or about December 2021, Plaintiff Haythe purchased a 65" TU7000 Samsung Television in person from a Best Buy store in New York for approximately $599.  Prior to and at the time of her purchase of the Television, Plaintiff Haythe saw and reviewed the Television's marketing, advertising, and packaging, and saw that the Television was marketed, advertised, and packaged as having a "Motion Rate" of 120 Hz.  In purchasing her Television, Plaintiff Haythe saw and relied on Defendant's representations that the Television had a "Motion Rate" of 120 Hz and understood them as representations and warranties that the Television had hardware that was capable of producing a refresh rate of 120 Hz.  Accordingly, those representations and warranties were part of the basis of the bargain, in that Plaintiff Haythe would not have purchased her Television on the same terms had she known those representations were not true.  In making her purchase, Plaintiff Haythe paid an additional amount for the Television above what she would have paid for a television that was accurately represented to have hardware that was only capable of producing a refresh rate of 60 Hz.  Had Plaintiff Haythe known that the "Motion Rate" of 120 Hz claim was false and misleading, and that the Television Plaintiff Haythe purchased had hardware that was only capable of producing a refresh rate of 60 Hz, Plaintiff Haythe would not have purchased the Television, or would have paid substantially less for the Television.

8.      Plaintiff Douglas Smith is, and at all times relevant to this action has been, a domiciliary of Lake Hopatcong, New Jersey and a citizen of New Jersey.  In or about October 2020, Plaintiff Smith purchased a TU7000 Samsung Television in person from a Walmart store in New Jersey for approximately $450.  Prior to and at the time of his purchase of the Television,

Plaintiff Smith saw and reviewed the Television's marketing, advertising, and packaging, and saw that the Television was marketed, advertised, and packaged as having a "Motion Rate" of 120 Hz.  In purchasing his Television, Plaintiff Smith saw and relied on Defendant's representations that the Television had a "Motion Rate" of 120 Hz and understood them as representations and warranties that the Television had hardware that was capable of producing a refresh rate of 120 Hz.  Accordingly, those representations and warranties were part of the basis of the bargain, in that Plaintiff Smith would not have purchased his Television on the same terms had he known those representations were not true.  In making his purchase, Plaintiff Smith paid an additional amount for the Television above what he would have paid for a television that was accurately represented to have hardware that was only capable of producing a refresh rate of 60 Hz.  Had Plaintiff Smith known that the "Motion Rate" of 120 Hz claim was false and misleading, and that the Television Plaintiff Smith purchased had hardware that was only capable of producing a refresh rate of 60 Hz, Plaintiff Smith would not have purchased the Television, or would have paid substantially less for the Television.

9.     Plaintiff Peter Coffin is, and at all times relevant to this action has been, a domiciliary of Boston, Massachusetts and a citizen of Massachusetts.  In or about October 2021, Plaintiff Coffin purchased a 65" AU8000 Samsung Television online from Amazon in Massachusetts for approximately $780.  Prior to and at the time of his purchase of the Television, Plaintiff Coffin saw and reviewed the Television's marketing, advertising, and packaging, and saw that the Television was marketed, advertised, and packaged as having a "Motion Rate" of 120 Hz.  In purchasing his Television, Plaintiff Coffin saw and relied on Defendant's representations that the Television had a "Motion Rate" of 120 Hz and understood them as representations and warranties that the Television had hardware that was capable of producing a

refresh rate of 120 Hz.  Accordingly, those representations and warranties were part of the basis

of the bargain, in that Plaintiff Coffin would not have purchased his Television on the same

terms had he known those representations were not true.  In making his purchase, Plaintiff Coffin

paid an additional amount for the Television above what he would have paid for a television that

was accurately represented to have hardware that was only capable of producing a refresh rate of

60 Hz.  Had Plaintiff Coffin known that the "Motion Rate" of 120 Hz claim was false and

misleading, and that the Television Plaintiff Coffin purchased had hardware that was only

capable of producing a refresh rate of 60 Hz, Plaintiff Coffin would not have purchased the

Television, or would have paid substantially less for the Television.

10.     Defendant Samsung Electronics America, Inc. is corporation incorporated in the

State of New York with its principal place of business located at 85 Challenger Road, Ridgefield

Park, New Jersey 07660.  Samsung markets and sells the Televisions at issue throughout the

United States and the states of New York, New Jersey, and Massachusetts.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because

this is a class action in which at least one member of the class is a citizen of a state different from

Defendant, the amount in controversy exceeds $5 million, exclusive of interest and costs, and the

proposed class contains more than 100 members.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because

Defendant resides in this District and a substantial portion of the events giving rise to this action

occurred in this District.

13.     This Court has general personal jurisdiction over Defendant because Defendant is

incorporated in New York.

## FACTUAL ALLEGATIONS

### I.   An Overview Of Refresh Rates

14.     Expressed in Hertz (Hz), meaning "per second," a TV's actual refresh rate tells you how many times per second a new frame is pulled from the video source.  The human eye starts stitching these images together to create the illusion of smooth motion, similar to how rapidly flipping pages in a flipbook gives the impression of movement.

15.     "Most TVs today offer one of two refresh rates: 60 Hz, which refreshes the display image 60 times per second, and 120 Hz, which refreshes 120 times per second."  A 120 Hz refresh rate is superior because more frames per second will appear on a television screen, *i.e.*, 120 frames per second, meaning movement (especially fast movement) will look smoother and clearer.[2]

16.     Again, a flipbook provides an apt analogy.  The more individual pages a flipbook has showing each and every movement, the cleaner and smoother any motion will appear.  But, if the flipbook is missing certain pages here and there, there will still be a "motion" effect, but it will look less smooth.  The same principle applies to a television's refresh rate: the more individual frames the television can display per second, the smoother the motion will appear, whereas "you'll notice a glitch or a missing frame in the video sequence" at lower refresh rates[3]:

---

[2] Brian Westover, *This Is The Biggest Lie Told To Tv Shoppers — And How To See Through It*, TOM'S GUIDE, Dec. 5, 2021, https://www.tomsguide.com/opinion/tv-refresh-rates-how-to-see-through-the-tv-industrys-biggest-lie.

[3] Bob Cut Editors, *120 and 240 Motion Rates – What's the Difference Between Them?*, BOB CUT, Sept. 20, 2021, https://bobcutmag.com/2021/09/20/120-and-240-motion-rates/.



17.     Understandably, therefore, a higher refresh rate is material and important to consumers, and consumers are willing to pay a price premium for televisions that have a higher refresh rate.  Likewise, television manufacturers—including Samsung—charge more for televisions with higher refresh rate.  This importance has only increased as new media and gaming in particular have been able to take advantage of higher frame rates.[4]

18.     Indeed, Samsung itself acknowledges that a higher refresh rate of 120 Hz (as compared to 60 Hz) is "important" because it "means smoother navigation as well as improved gaming and entertainment."[5]

---

[4] Brian Westover, *This Is The Biggest Lie Told To Tv Shoppers — And How To See Through It*, *supra* note 2.

[5] REFRESH RATE OPTIONS ON YOUR GALAXY PHONE, https://www.samsung.com/us/support/answer/ANS00086005/.

19.     The refresh rate of a television is exclusively the result of a television's hardware. Specifically, the hardware is capable of pulling a limited number of frames, per second, from the video source—whether 60 Hz, 120 Hz, or otherwise.  This is determined by the hardware.  A television with a 60 Hz refresh rate, like the Televisions at issue, is simply not capable of displaying a 120 Hz refresh rate as a basic limitation of its hardware.  This is akin to how a black-and-white television is simply not capable of displaying color images as a matter of hardware.

**II.     Samsung Represents The Televisions As Having A "Motion Rate" Of 120 Hz, When In Fact, The Televisions Have A Refresh Rate Of Only 60 Hz**

20.     Samsung is one of the world's largest technology companies.  Samsung manufacturers, distributes, and sells a variety of products, including televisions and cellphones. Among the products that Samsung manufacturers, distributes, and sells are the Televisions.

21.     Samsung represents that each Television has a "Motion Rate" of 120 Hz.  For instance, in the "Specs Sheets" for the TU7000 and AU8000 televisions that Plaintiffs purchased, Samsung represents that these Televisions have a "Motion Rate" of 120 Hz:





22.     Samsung does not define the term "Motion Rate" on its website or marketing literature.  But, as noted above, the rate of motion of a television typically refers to "how many times per second a new frame or image can be put up on screen," which "[t]he human eye starts stitching these images together to create the illusion of smooth motion."[6]  This statistic is understood by reasonable consumers to mean the actual "refresh rate," which is the rate at which the hardware (*e.g.*, the display, the picture processer) can "re-draw" the images on the screen.

23.     Samsung does not provide the "Refresh Rate" for the Televisions on its Spec Sheets or marketing materials, only the "Motion Rate."  Accordingly, when a reasonable consumer sees that the Televisions have a "Motion Rate" of 120 Hz, they are left with the impression that the Televisions have hardware that is capable of producing a "Refresh Rate" of 120 Hz.

24.     Unfortunately for consumers, the Televisions do not have hardware that is capable of producing a "Refresh Rate" of 120 Hz.  Instead, the "Motion Rate" is double the actual refresh rate, meaning a Television with a Motion Rate of 120 Hz has hardware that is only capable of producing a refresh rate of 60 Hz.[7]

25.     In order to "justify" this higher number, the "Motion Rate" statistic takes "AI enhancements into account" in order to allow the Televisions to "emulate" a 120 Hz refresh rate.[8]  But a television with a Motion Rate of 120 Hz is never and can never be the same as a television with a true refresh rate of 120 Hz because the hardware of the Televisions is only

---

[6] Brian Westover, *This Is The Biggest Lie Told To Tv Shoppers — And How To See Through It*, *supra* note 2.

[7] Geoffrey Morrison, *4k and 8k Tv Refresh Rates From 60hz to 120hz: Everything You Should Know*, CNET, Oct. 27, 2021, https://www.cnet.com/tech/home-entertainment/4k-and-8k-tv-refresh-rates-from-60hz-to-120hz-everything-you-should-know/.

[8] Tim Wells, *Motion Rate vs. Refresh Rate: Fake Marketing BS?*, ANDROID TV NEWS, https://androidtvnews.com/motion-rate-vs-refresh-rate/.

capable of producing a refresh rate of 60 Hz.  Further, a television with hardware that is capable

of producing a 120 Hz refresh rate is "better," and more valuable to consumers, than a television

with a 120 Hz Motion Rate but hardware that is only capable of producing a refresh rate of 60

Hz.[9]

26.     One technique Samsung employs to achieve the higher Motion Rate is Black

Frame Insertion ("BFI").  BFI involves "insert[ing] a black frame in-between images to reduce

motion blur.  Each black frame lasts a fraction of a second but introduces contrast that helps

improve motion clarity."[10]

27.     The following graphic illustrates BFI in action[11]:



An illustration of black frame insertion. The original video would have 60 images per second of the friendly fish. A TV with BFI would "insert" 60 black images in between the real images. How long this black image is shown varies depending on the refresh rate of the TV and other factors determined by the TV's designers to create the image they want you to see.

---

[9] History Computer Staff, *Refresh Rate vs. Motion Rate: Full Comparison*, HISTORY COMPUTER, Apr. 19, 2022, https://history-computer.com/refresh-rate-vs-motion-rate/.

[10] *Id.*

[11] Geoffrey Morrison, *Beware Fake 120Hz Refresh Rates on 4K TVs*, CNET, May 29, 2018, https://www.cnet.com/tech/home-entertainment/beware-fake-120hz-refresh-rates-on-4k-tvs/.

28.     However, BFI causes flicker and reduces screen brightness.[12]  By contrast, a television with hardware capable of producing a 120 Hz refresh rate does not require BFI to improve motion clarity because it can inherently generate more frames per second without causing flicker or reducing screen brightness.

29.     Another technique Samsung employs to achieve the higher Motion Rate is Frame Rate Interpolation ("FRI").  FRI "works similar to BFI, but instead of black frames, the TV's processor generates 'fake' frames based on the previous and the next frame"[13]:



---

[12] Geoffrey Morrison, *Beware Fake 120Hz Refresh Rates on 4K TVs*, *supra* note 11.

[13] Joseph Moore, *What is Samsung Motion Rate, Sony MotionFlow, and LG TruMotion?*, DISPLAY NINJA, Apr. 1, 2022, https://www.displayninja.com/what-is-samsung-motion-rate-sony-motionflow-lg-trumotion/.

30.     FRI is better known as the "soap opera effect" "because it makes everything appear unusually sharp and crisp, like TV soap operas."[14]  But FRI is hated by consumers because it makes video look blurry, smeared,[15] and artificial.[16]  Filmmakers also detest FRI because it "messes with the cadence" of the movie and is not how films are generally shot.[17]  And gamers dislike FRI because it can "introduce additional input lag."[18]

31.     Again, by contrast, a television with hardware capable of producing a refresh rate of 120 Hz does not require FRI to improve motion clarity and smoothness because it can inherently generate more frames per second without making videos appear artificial, blurry, or introducing input lag.

32.     In short, a television with a Motion Rate of 120 Hz is not the same as—and, in fact, is inferior to—a television with a true 120 Hz refresh rate.  Thus, Samsung deceived consumes because its representations gave the impression that its Televisions had hardware capable of producing a refresh rate of 120 Hz, when in fact, the hardware of the Televisions is only capable of producing 60 Hz.  That Samsung may claim it has "justification" for its representations is of no moment to Plaintiffs' claims and is wrong regardless.

33.     Samsung knows, or at least should know, that the Televisions, which each have a Motion Rate of 120 Hz, are not the same as—and, in fact, are inferior to—a television with a true

---

[14] Tim Wells, *Motion Rate vs. Refresh Rate: Fake Marketing BS?*, *supra* note 8.

[15] Brian Westover, *This Is The Biggest Lie Told To Tv Shoppers — And How To See Through It*, *supra* note 2.

[16] Joseph Moore, *What is Samsung Motion Rate, Sony MotionFlow, and LG TruMotion?*, *supra* note 13.

[17] Geoffrey Morrison & David Katzmaier, *Soap Opera Effect: Tom Cruise Wants You to Turn it Off.  Here's How*, CNET, Dec. 5, 2018, https://www.cnet.com/tech/home-entertainment/soap-opera-effect-tom-cruise-wants-you-to-turn-it-off-heres-how/.

[18] Rob Shafer, *What is the Soap Opera Effect?*, DISPLAY NINJA, May 7, 2021, https://www.displayninja.com/what-is-the-soap-opera-effect/.

120 Hz refresh rate because the hardware of the Televisions is only capable of producing a 60 Hz refresh rate. And reasonable consumers like Plaintiffs cannot readily verify that the Televisions' Motion Rate is not the same as the refresh rate because Samsung does not define the former term and Samsung does not list the refresh rate on the Spec Sheet or marketing materials for the Televisions. Further, reasonable consumers like Plaintiffs cannot take apart their Televisions and examine the hardware components that actually produce the refresh rate. Thus, Samsung's representations and omissions are likely to deceive and did deceive Plaintiffs and members of the Classes.

34.     Samsung's misleading and untrue statements about the refresh rates of its Televisions were intended to influence and did influence Plaintiffs' and members of the Classes' decisions on whether to purchase the Televisions.

35.     Each Plaintiff experienced worse performance and picture quality with their Televisions than they would have experienced with a television with a true 120 Hz refresh rate, such as her Television having a slower refresh rate and displaying less vibrant colors.

36.     Samsung's misleading and untrue statements about the technical specifications and performance of its Televisions allowed Samsung to sell its lesser-quality products at a higher price and allowed Samsung to realize a profit it may not have otherwise made if it were truthful regarding the performance capabilities of its televisions.

## CLASS ALLEGATIONS

37.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Televisions during the applicable statute of limitations period (the "Class"). Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the

Televisions for resale.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

38.     Plaintiff Haythe seeks to represent a subclass of all Class Members who purchased the Televisions in New York during the applicable statute of limitations period (the "New York Subclass").

39.     Plaintiff Smith seeks to represent a subclass of all Class Members who purchased the Televisions in New Jersey during the applicable statute of limitations period (the "New Jersey Subclass").

40.     Plaintiff Coffin seeks to represent a subclass of all Class Members who purchased the Televisions in Massachusetts during the applicable statute of limitations period (the "Massachusetts Subclass").

41.     Collectively, the Class and the state Subclasses are referred to as the "Classes."

42.     Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based on, inter alia, changing circumstances and new facts obtained.

43.     **Numerosity**.  The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of individuals that are members of the proposed Classes.  Although the precise number of proposed members are unknown to Plaintiffs, the true numbers of members of the Classes are known by Defendant.  Members of the Classes may be notified of the pendency of this action by mail

and/or publication through the distribution records of Defendant and third-party retailers and vendors.

44.    **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

(a)    whether Defendant misrepresented and/or failed to disclose material facts concerning the Televisions;

(b)    whether Defendant's conduct was unfair and/or deceptive; and

(c)    whether Plaintiffs and the Classes sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

45.    **Typicality.**  Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, Defendant's Televisions, and Plaintiffs sustained damages from Defendant's wrongful conduct.

46.    **Adequacy of Representation.**  Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class Members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

47.    **Superiority.**  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized

litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims are before this Court for consistent adjudication of liability issues.

### CAUSES OF ACTION

### COUNT I
### Violation of the New York General Business Law § 349
### (On behalf of the New York Subclass)

48.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

49.     Plaintiff Haythe brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

50.     Plaintiff Haythe and New York Subclass members are "persons" within the meaning of GBL § 349(h).

51.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

52.     Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

53.     In the course of Defendant's business, Defendant intentionally made false and misleading statements by holding out the Televisions as having a Motion Rate of 120 Hz (which reasonable consumers understand to mean as having hardware capable of producing a refresh

rate of 120 Hz), when in fact, the Televisions only had hardware capable of producing a refresh rate of 60 Hz.

54.     In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

55.     Defendant's deceptive acts or practices were materially misleading.  Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff Haythe, about the quality of its Televisions, as discussed throughout.

56.     Plaintiff Haythe and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

57.     Defendant's actions set forth above occurred in the conduct of trade or commerce.

58.     The foregoing deceptive acts and practices were directed at consumers.

59.     Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest.  Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's misleading conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Televisions.

60.     Plaintiff Haythe and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the Televisions had they known the truth, and (b) they overpaid for the Televisions on account of the misrepresentations and omissions, as described herein.

61.     On behalf of herself and other members of the New York Subclass, Plaintiff Haythe seeks to enjoin Defendant's unlawful acts and practices described herein, to recover her actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other

just and proper relief available under GBL § 349.  In addition, because Defendant acted willfully or knowingly, Plaintiff Haythe and New York Subclass members seek to recover three times their actual damages.

**COUNT II**
**Violation of the New York General Business Law § 350**
**(On behalf of the New York Subclass)**

62.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

63.     Plaintiff Haythe brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

64.     GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

65.     GBL § 350-a(1) defines "false advertising" as

> advertising, including labeling of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customer or usual.

66.     Defendant's labeling and advertisement of the Televisions was false and misleading in a material way.  Specifically, Defendant advertised the Televisions as having a Motion Rate of 120 Hz (which reasonable consumers understand to mean as having hardware capable of producing a refresh rate of 120 Hz), when in fact, the Televisions only had hardware capable of producing a refresh rate of 60 Hz.

67.     Plaintiff Haythe, like other reasonable consumers, understood Defendant's misrepresentations to mean that the Televisions had hardware capable of producing a refresh rate of 120 Hz.

68.     This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

69.     This misrepresentation has resulted in consumer injury or harm to the public interest.

70.     As a result of this misrepresentation, Plaintiff Haythe and New York Subclass members have suffered economic injury because (a) they would not have purchased the Televisions had they known the truth, and (b) they overpaid for the Televisions on account of the misrepresentations and omissions, as described herein.

71.     By reason of the foregoing and as a result of Defendant's conduct, Plaintiff Haythe and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or $500, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**
**Violation of the New Jersey Consumer Fraud Act,**
**N.J.S.A. §§ 56:8-1, *et seq.***
**(On behalf of the New Jersey Subclass)**

72.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

73.     Plaintiff Smith brings this claim individually and on behalf of the members of the New Jersey Subclass against Defendant.

74.     The New Jersey Consumer Fraud Act ("NJCFA"), §§ 56:8-1, *et seq.*, prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  N.J.S.A. § 56:8-2.

75.     Plaintiff Smith and members of the New Jersey Subclass are consumers who purchased the Televisions for personal use.

76.     In violation of the NJCFA, Defendant employed unconscionable commercial practices, deception, fraud, and/or false pretense by providing Televisions that were falsely represented as having a Motion Rate of 120 Hz (which reasonable consumers understand to mean as having hardware capable of producing a refresh rate of 120 Hz), and charging a premium for the Televisions based on those false representations.

77.     Defendant's fraudulent omissions were material to Plaintiff Smith and members of the New Jersey Subclass.  When Plaintiff Smith and members of the New Jersey Subclass purchased their Televisions, they reasonably relied on the reasonable expectation that the Televisions had hardware capable of producing a refresh rate of 120 Hz.  Had Defendant disclosed that the Televisions only had hardware capable of producing a refresh rate of 60 Hz, Plaintiff Smith and members of the New Jersey Subclass would not have purchased the Televisions or would have paid less for them.

78.     Defendant knowingly mispresented that the Televisions had a Motion Rate of 120 Hz (which reasonable consumers understand to mean as having hardware capable of producing a refresh rate of 120 Hz) at the time of sale and at all relevant times thereafter.

79.     Defendant owed a duty to disclose that the Televisions did not have a refresh rate of 120 Hz to Plaintiff Smith and members of the New Jersey Subclass because Defendant possessed superior and exclusive knowledge regarding the true refresh rate of the Televisions. Rather than truthfully advertise the Televisions, Defendant intentionally misrepresented that the Televisions had a Motion Rate of 120 Hz (which reasonable consumers understand to mean as having hardware capable of producing a refresh rate of 120 Hz) with the intent to mislead Plaintiff Smith and members New Jersey Subclass to sell additional Televisions and/or charge a price premium.

80.     Defendant knew, or should have known, that the Televisions did not have hardware capable of producing a refresh rate of 120 Hz.

81.     As a direct and proximate result of Defendant's wrongful conduct in violation of the NJCFA, Plaintiff Smith and members of the New Jersey Subclass members have suffered and continue to suffer ascertainable loss because, had Plaintiff Smith and members of the New Jersey Subclass known that the Televisions only had hardware capable of producing a refresh rate of 60 Hz at the time of purchase, they would not have bought the Televisions or would have paid much less for them.  Further, Plaintiff Smith and members of the New Jersey Subclass paid a price premium based on Defendant's misrepresentations.

82.     As a result of Defendant's fraudulent and/or deceptive conduct and/or knowing misrepresentations, Plaintiff Smith and members of the New Jersey Subclass are entitled to

actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial.  *See* N.J.S.A. § 56:8-19.

83.     Plaintiff Smith and members of the New Jersey Subclass also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA.  *See* N.J.S.A. § 56:8-19.

**COUNT IV**
**Breach of Express Warranty**
**(On behalf of the Classes)**

84.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

85.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

86.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Televisions had a Motion Rate of 120 Hz (which reasonable consumers understand to mean as having hardware capable of producing a refresh rate of 120 Hz).

87.     Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Televisions were offered for sale and purchased by Plaintiffs and members of the Classes.

88.     In fact, the Televisions do not conform to Defendant's representations and warranties because the Televisions had hardware only capable of producing a refresh rate of 60 Hz.  By falsely representing the Televisions in this way, Defendant breached express warranties.

89.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and members of the Classes have been injured and harmed in an amount to be proven

at trial because they would not have purchased the Televisions, or would have paid substantially less for it, if they had known that the Televisions only had a refresh rate of 60 Hz.

90.     On April 22, 2022, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiffs that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiffs' counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiffs' counsel's letter is attached hereto as **Exhibit 1**.

**COUNT V**
**Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.***
**(On behalf of the Classes)**

91.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

92.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

93.     The Televisions are consumer products as defined in 15 U.S.C. § 2301(1).

94.     Plaintiffs and members of the Classes are consumers as defined in 15 U.S.C. § 2301(3).

95.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

96.     The amount in controversy of each individual's claim is more than the sum or value of twenty-five ($25) dollars, and the aggregate amount in controversy of all claims to be determined in this suit is equal to or greater than $50,000.00.  Further, there at least 100 members of the putative Classes.

97.     In connection with the sale of the Televisions, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), that the Televisions had a Motion Rate of 120 Hz (which reasonable consumers understand to mean as having hardware capable of producing a refresh rate of 120 Hz).

98.     In fact, the Televisions do not conform to Defendant's warranty because the Televisions only had hardware capable of producing a refresh rate of 60 Hz.

99.     By reason of Defendant's breach of warranty, Defendant violated the statutory rights due to Plaintiffs and members of the Classes pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiffs and members of the Classes.

100.    Plaintiffs and members of the Classes were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Televisions if they knew the Televisions only had hardware capable of producing a refresh rate of 60 Hz.

**COUNT VI**
**Unjust Enrichment**
**(On behalf of the Classes)**

101.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

102.    Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

103.    Plaintiffs and members of the Classes conferred a benefit in the form of monies paid on Defendant by purchasing the Televisions.

104.    Defendant voluntarily accepted and retained this benefit.

105.   Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the deceptively marketed Televisions, it would be unjust and inequitable for the Defendant to retain it without paying the value thereof.

106.   As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have suffered in an amount to be proven at trial.

**COUNT VII**
**Fraud**
**(On behalf of the Classes)**

107.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

108.   Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

109.   As discussed above, Defendant provided Plaintiffs and members of the Classes with false or misleading material information about the Televisions, including but not limited to the fact that the Televisions had a Motion Rate of 120 Hz (which reasonable consumers understand to mean as having hardware capable of producing a refresh rate of 120 Hz).

110.   These misrepresentations were made with knowledge of their falsehood. Defendant, as the manufacturer, distributor, and seller of the Televisions, knows the true refresh rate of each Television it sells.

111.   The misrepresentations made by Defendant, upon which Plaintiffs and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and members of the Classes to purchase the Televisions.

112.     The fraudulent actions of Defendant caused damage to Plaintiffs and members of the Classes, who are entitled to actual losses and damages in a sum to be determined at trial, including other legal and equitable relief as a result.

**COUNT VIII**
**Violation of the Massachusetts Unfair and Deceptive Business Practices Act,**
**Mass. Gen. Laws Ch. 93A *et seq.***
**(On behalf of the Massachusetts Subclass)**

113.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

114.     Plaintiff Coffin brings this claim individually and on behalf of the members of the Massachusetts Subclass against Defendant.

115.     Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business Practices Act ("MUDBPA")—prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce."  An act is "deceptive" under Chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted."  *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

116.     Pursuant to the definitions codified at Chapter 93A § 1, Defendant is a "person," and Defendant is engaged in "trade" and "commerce" in Massachusetts by offering for sale the Televisions that directly or indirectly affect the people of Massachusetts.

117.     By engaging in the acts and omissions alleged above and incorporated herein, Defendant has engaged and continues to engage in unfair or deceptive acts or practices in the conduct of trade or commerce.

118.     Defendant's misrepresentations deceive and have a tendency to deceive a reasonable consumer and the general public.

119.     Defendant's acts and omissions are material, in that a reasonable person would

attach importance to the information and would be induced to act on the information in making purchase decisions.

120.    Plaintiff Coffin and members of the Massachusetts Subclass reasonably relied upon and were deceived by Defendant's affirmative statements when they purchased the Television.

121.    Defendant knowingly mispresented that the Televisions had a Motion Rate of 120 Hz (which reasonable consumers understand to mean as having hardware capable of producing a refresh rate of 120 Hz) at the time of sale and at all relevant times thereafter.

122.    Had Plaintiff Coffin and Massachusetts Subclass members known that the Televisions did not have hardware capable of producing a 120 Hz refresh rate, they would either not have purchased the Televisions, or would have paid less for them than they did.

123.    Defendant's misconduct caused Plaintiff Coffin and members of the Massachusetts Subclass to suffer an injury, adverse consequence, or loss because (a) they would not have purchased the Televisions on the same terms if the true facts were known about the product; (b) they paid a price premium for the Televisions due to Defendant's promises that the Televisions had a Motion Rate of 120 Hz (which reasonable consumers understand to mean as having hardware capable of producing a refresh rate of 120 Hz); and (c) the Televisions did not have the characteristics as promised by Defendant.

124.    Plaintiff Coffin and members of the Massachusetts Subclass have been harmed by this injury, adverse consequence, and/or loss.

125.    For each loss, Plaintiff Coffin and and each member of the Massachusetts Subclass may recover an award of actual damages or twenty-five dollars, whichever is greater. Ch. 93A § 9(3).

126.     Because Defendant acted willfully or knowingly, Plaintiff Coffin and each member of the Massachusetts Subclass may recover up to three but not less than two times this amount.  In addition, Plaintiff Coffin may recover attorneys' fees and costs.

127.     In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), on April 22, 2022, Plaintiffs' counsel served Defendant with written notice of its violation of Ch. 93A and a demand for relief.  A true and correct copy of the letter is attached hereto as **Exhibit 1**.  Defendant did not make a written tender of settlement for the putative Massachusetts Subclass and denied all wrongdoing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request, individually and on behalf of the alleged Classes, that the Court enter judgment in their favor and against Defendant as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives of the Classes, and naming Plaintiffs' attorneys as Class Counsel;

(b)     For an order declaring that Defendant's conduct violates the causes of action referenced herein;

(c)     For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and;

(h)     For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: August 4, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Frederick J. Klorczyk III*
　　　Frederick J. Klorczyk III

Frederick J. Klorczyk III
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: fklorczyk@bursor.com
　　　　mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ndeckant@bursor.com

*Attorneys for Plaintiffs*