UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONYA HAYTHE, DOUGLAS SMITH, and PETER COFFIN, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>      Defendant. | Case No. 1:22-cv-03509-VEC<br><br>Hon. Valerie E. Caproni |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
<u>MOTION TO COMPEL ARBITRATION</u>**

Dated: September 16, 2022        **BURSOR & FISHER, P.A.**
                              Frederick J. Klorczyk III
                              Max S. Roberts
                              888 Seventh Avenue
                              New York, NY 10019
                              Telephone: (646) 837-7150
                              Facsimile: (212) 989-9163
                              Email: fklorczyk@bursor.com
                                  mroberts@bursor.com

                              **BURSOR & FISHER, P.A.**
                              Neal J. Deckant
                              1990 N. California Boulevard, Suite 940
                              Walnut Creek, CA 94596
                              Telephone: (925) 300-4455
                              Facsimile: (925) 407-2700
                              Email: ndeckant@bursor.com

                              *Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION .................................................................................................................... 1

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ............................................................................................................................ 4

    I.    SAMSUNG HAS NOT REBUTTED THE PRESUMPTION THAT THE COURT, NOT AN ARBITRATOR, SHOULD DECIDE ISSUES OF ARBITRABILITY ............................................................................ 4

    II.    PLAINTIFFS' CLAIMS SHOULD NOT BE COMPELLED TO ARBITRATION BECAUSE THEIR CLAIMS ARISE OUT OF, ARE RELATED TO, AND ARE CONNECTED TO THE TELEVISIONS' HARDWARE AND REPRESENTATIONS MADE ON THE LABELING AND PACKAGING .................................................. 7

CONCLUSION ....................................................................................................................... 11

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*327 Realty, LLC v. Nextel of New York, Inc.*,
   150 A.D.3d 581 (N.Y App. Div. 1st Dep't 2017) .................................................. 3, 6, 8

*Al Thani v. Hanke*,
   2021 WL 4311391 (S.D.N.Y Sept. 21, 2021) ............................................................ 4

*Barrows v. Brinker Restaurant Corp.*,
   36 F.4th 45 (2d Cir. 2022) ......................................................................................... 3

*Cavanagh v. Columbia Sussex Corp.*,
   2021 WL 4356042 (E.D.N.Y. Sept. 24, 2021) .......................................................... 9

*Cleanup North Brooklyn v. Brooklyn Transfer LLC*,
   2018 WL 1981387 (E.D.N.Y. Apr. 27, 2018) ........................................................... 9

*Colliton v. Cravath, Swaine & Moore LLP*,
   2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) .......................................................... 9

*Contec Corp. v. Remote Solution, Co.*,
   398 F.3d 205 (2d Cir. 2005) ...................................................................................... 4

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
   990 F.3d 173 (2d Cir. 2021) .................................................................................... 10

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
   6 F.4th 308 (2d Cir. 2021) ................................................................................ 2, 4, 5

*Dedon GmbH v. Janus et Cie*,
   411 F. App'x 361 (2d Cir. 2011) ............................................................................... 7

*Doctor's Assocs. v. Alemayehu*,
   934 F.3d 245 (2d Cir. 2019) ...................................................................................... 4

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) .............................................................................................. 3, 5

*Harris v. TD Ameritrade Inc.*,
   338 F. Supp. 3d 170 (S.D.N.Y. 2018) ....................................................................... 9

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   139 S. Ct. 524 (2019) ................................................................................................ 4

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) .................................................................................................... 5

*Jillian Mechanical Corp. v. United Serv. Workers Union Local 355*,
    882 F. Supp. 2d 358 (E.D.N.Y. 2012) ............................................................................. 3

*Jones v. Halliburton Co.*,
    583 F.3d 228 (5th Cir. 2009) ......................................................................................... 11

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
    67 F.3d 20 (2d Cir. 1995) ............................................................................................... 8

*Metro. Life Ins. Co., v. Bucsek*,
    919 F.3d 184 (2d Cir. 2019) ....................................................................................... 4, 5

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014) ......................................................................................... 5

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995) ..................................................................................................... 11

*PainWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) ........................................................................................... 5

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
    388 U.S. 395 (1967) ....................................................................................................... 4

*QED Holdings, LLC v. Block*,
    2015 WL 12659935 (C.D Cal. June 11, 2015) ............................................................ 10

*Shaw Group Inc. v. Triplefine Intern. Corp.*,
    322 F.3d 115 (2d Cir. 2003) ........................................................................................... 5

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) ....................................................................................................... 9

*Streit v. Bushnell*,
    424 F. Supp. 2d 633 (S.D.N.Y. 2006) ............................................................................ 9

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
    871 F.3d 791 (9th Cir. 2017) ....................................................................................... 10

**RULES**

Fed. R. Civ. P. 8(e) ................................................................................................................ 9

Plaintiffs Sonya Haythe, Douglas Smith, and Peter Coffin ("Plaintiffs") respectfully submit this opposition to Defendant Samsung Electronics America, Inc.'s ("Samsung" or "Defendant") Motion to Compel Arbitration (ECF No. 31) (the "Motion" or "Mtn.").

## INTRODUCTION

This case concerns false and misleading representations regarding the hardware and performance specifications of certain models of Defendant's Televisions, as set forth on the products' marketing, advertising, and packaging.[1] Specifically, Defendant represents that the "motion rate" for the Televisions is 120 Hz, which reasonable consumers understand to mean that the Televisions have an actual refresh rate of 120 Hz (*i.e.*, reasonable consumers believe that the Televisions are capable of presenting 120 unique frames per second as taken from a hardware-based video source). First Amended Complaint (ECF No. 29) ("FAC") ¶ 2. In plain English, reasonable consumers think that the Televisions pull 120 frames every second from a device, like a computer or game console. *Id.* To be sure, there are many televisions and computer monitors on the market that are capable of displaying a true 120 Hz refresh rate (*i.e.*, 120 frames per second taken from the video source), and consumers place value on displays with higher refresh rates because "movement (especially fast movement) will look smoother and clearer." *Id.* ¶ 15. Indeed, representations about higher refresh rates carry a price premium to reasonable consumers, as "televisions with a higher refresh rate" have an importance that "has only increased as new media and gaming in particular have been able to take advantage of higher frame rates." *Id.* ¶ 17.

But unknown to Plaintiffs at the time of purchase, Defendant' representations are false. The hardware in the Televisions is only capable of producing a refresh rate of 60 Hz as a fundamental hardware limitation of the Televisions at issue. *Id.* ¶ 3. The Televisions are simply

---

[1] "Televisions" shall refer to those models defined at FAC ¶ 1 n.1.

not capable of pulling 120 frames per second from the hardware-based video source, under any conditions, and "each of the Televisions' hardware is only capable of producing an actual refresh rate of only 60 Hz." *Id.*

Defendant now seeks to compel Plaintiffs to arbitrate their claims pursuant to a provision in its purported "Agreement between Samsung and the User." Abuali Decl. Exs. A-B. This is a screen that consumers are presented with when they first boot up and configure their televisions. Like many modern televisions, the Televisions at issue here contain embedded apps with networking and Internet connectivity, and other "smart TV" features. This is what the arbitration clause pertains to: the embedded "smart TV" software. The arbitration clause does *not* pertain to fundamental, *hardware-based* characteristics of the Televisions, nor misrepresentations made on the labeling and packaging at the time of sale that concern the Televisions' basic hardware and specifications.

As such, the Motion should be denied. *First*, Samsung contends that it is up to an arbitrator to determine whether Plaintiffs' claims fall within the scope of the arbitration clause, as opposed to the Court. However, "[w]here … the question is who should decide arbitrability, there is a presumption that the question should be resolved by the court." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021) (emphasis removed). Samsung has not rebutted that presumption here, so it is for the Court to decide whether Plaintiffs' claims fall within the scope of the arbitration clause.

*Second*, the arbitration clause at issue is plainly outside the scope of this dispute. Samsung's arbitration clause states that "any claim, dispute or controversy … the User may have against any Samsung entity … arising out of, relating to, or connected in any way *with the Services* or the determination of the scope or applicability of this clause, will be resolved exclusively by final and binding arbitration." Abuali Decl. Ex. A § 14.8; Abuali Decl. Ex. B

§ 14.8 (emphasis added).  Samsung defines "Services" to mean "Samsung's productions, application, *software*, information offering services, services, website and other relates services provided by us or any third party."  Abuali Decl. Ex. A § 1.1(b), Abuali Decl. Ex. B § 1.1(b).  Nothing about this definition covers claims arising out of, relating to, or connected with *hardware* or the *product specifications found on the labeling and packaging*, such as Plaintiffs' claims here.  Therefore, the arbitration clause does not cover this dispute.  At the very least, the arbitration clause is ambiguous as to whether it applies to Plaintiffs' claims, which must be construed against Samsung as the drafter of the agreement.  *See 327 Realty, LLC v. Nextel of New York, Inc.*, 150 A.D.3d 581, 582 (N.Y App. Div. 1st Dep't 2017).  In short, this case concerns misrepresentations concerning false and misleading statements made on the labeling and packaging of the Televisions, and the basic specifications and hardware functionality of the Televisions; the case does not concern the "smart TV" features covered by the arbitration clause that users see when they set up the Televisions in their homes.

## LEGAL STANDARD

"On a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists."  *Jillian Mechanical Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 364 (E.D.N.Y. 2012).  "This Court must first determine whether there is a valid agreement to arbitrate between the parties."  *Id*.  "If there is, the Court must then determine whether the particular dispute falls within the scope of arbitration clause."  *Id*.  "Because motions to compel arbitration are governed by a standard similar to that applicable for a motion for summary judgment, [the] [C]ourt must draw all reasonable inferences in favor of the non-moving party."  *Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 49 (2d Cir. 2022) (internal quotations omitted).  "Arbitration is strictly a matter of consent, and thus is a way to resolve … *only those disputes* … the parties have agreed to submit to arbitration."  *Granite Rock*

3

*Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original). These principles are consistent with the "equal footing" rule, which requires arbitration agreements to be "as enforceable as any other contract, *but not more so*." *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 404, n.12 (1967) (emphasis added).

## ARGUMENT

**I. SAMSUNG HAS NOT REBUTTED THE PRESUMPTION THAT THE COURT, NOT AN ARBITRATOR, SHOULD DECIDE ISSUES OF ARBITRABILITY**

Defendant argues "[i]f an arbitration agreement contains 'clear and unmistakable evidence' that the parties intended 'the question of arbitrability [to] be decided by the arbitrator,' then 'the arbitrator, not the court, shall determine whether an issue is arbitrable … The Arbitration Agreement here contains such clear and unmistakable evidence.'" Mtn. at 13. Not so. *First*, Defendant mischaracterizes the Court's role at this juncture. And *second*, Defendant fails to rebut the presumption that the Court should decide the issue of arbitrability.

"'Under the FAA, there is a general presumption that the issue of arbitrability'—whether a particular issue is to be arbitrated—'should be resolved by the courts.'" *Al Thani v. Hanke*, 2021 WL 4311391 at *4 (S.D.N.Y Sept. 21, 2021) (quoting *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Thus, "'threshold questions of arbitrability,' such as whether the arbitration agreement applies to a particular dispute, 'presumptively should be resolved by the court and not referred to the arbitrator.'" *DDK Hotels, LLC v. Williams-Sonoma, Inc.,* 6 F.4th 308, 317 (2d Cir. 2021) (quoting *Doctor's Assocs. v. Alemayehu*, 934 F.3d 245, 250-51 (2d Cir. 2019)).

"[C]ourts 'should not assume that the parties agreed to arbitrate arbitrability unless there is a clear and unmistakable evidence that they did so.'" *Metro. Life Ins. Co., v. Bucsek*, 919 F.3d 184, 190 (2d Cir. 2019) (quoting *Henry Schein, Inc. v. Archer and White Sales, Inc.,* 139 S. Ct.

4

524, 530 (2019)). In fact, "[t]he right of access to courts *is of such importance* that courts will retain authority over the question of arbitrability of the particular dispute unless 'the parties clearly and unmistakably provide[d]' that the question should go to arbitrators. *Metro. Life Ins. Co.*, 919 F.3d at 190 (emphasis added) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "Accordingly, in the absence of an arbitration agreement that *clearly and unmistakably* elects to have the resolution of the arbitrability of the dispute decided by the arbitrator, the question whether the particular dispute is subject to an arbitration agreement 'is typically an issue for judicial determination.'" *Id.* at 191 (emphasis added) (quoting *Granite Rock Co.*, 561 U.S. at 296). Therefore, "[t]he party seeking to compel arbitration of arbitrability bears the burden of establishing 'clear and unmistakable expression of the parties' intent to submit arbitrability disputes to arbitration." *DDK Hotels*, 6 F.4th at 317 (quoting *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC,* 770 F.3d 1010, 1032 (2d Cir. 2014)).

To assess whether the parties have clearly and unmistakably chosen to arbitrate arbitrability, courts consider "(1) '[i]n interpreting the contract, the intent of the parties governs;' (2) '[a] contract should be construed so as to give full meaning and effect to all of its provisions;' (3) words and phrases in a contract should be 'given their plain meaning;' and (4) ambiguous language should be construed against the interest of the drafting party." *Shaw Group Inc. v. Triplefine Intern. Corp.,* 322 F.3d 115, 121 (2d Cir. 2003) (quoting *PainWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996)). Therefore, "to determine whether the issue of arbitrability [] should be resolved by an arbitrator rather than the court, [the court] must examine the parties' agreement to determine whether they clearly and unmistakably agreed to have that issue resolved by arbitrators." *Id.*

Samsung has not overcome the presumption that the Court, rather than an arbitrator, should decide the issue of arbitrability. Defendant's arbitration agreement states that "any claim,

dispute or controversy … the User may have against any Samsung entity … arising out of, relating to, or connected in any way with the Services or the determination of the scope or applicability of this clause, will be resolved exclusively by final and binding arbitration administered by the International Chamber of Commerce ('ICC') and conducted before a sole arbitrator in accordance with the rules of the ICC." This provision does not "clearly and unmistakably" demonstrate the parties' joint intent to have a determination about the scope of arbitrability delegated to an arbitrator.

Samsung zeroes in on the language, "or the determination of the scope or applicability of this clause" (Mtn. at 13), but that does not warrant delegating the issue of arbitrability to the arbitrator. The arbitration clause reads that "any claim, dispute or controversy … *the User may have* … arising out of, relating to, or connected in any way with … the determination of the scope or applicability of this clause" is subject to arbitration. Abuali Decl. Ex. A § 14.8; Abuali Decl. Ex. B § 14.8 (emphasis added). In other words, only if *the user* invokes a dispute as to the applicability of the clause is it subject to arbitration. Here though, it is Samsung that is raising a dispute as to the applicability of its arbitration clause to Plaintiffs' hardware-based claims (*i.e.*, Samsung is raising the arbitration issue in the first place based on its belief that Plaintiffs' claims relate to software). Accordingly, because "the user" has not raised a dispute as to the "determination of the scope or applicability of this clause," the Court may properly decide the scope of the arbitration clause.

At the very least, the arbitration clause is ambiguous as to whether arbitrability must be decided by an arbitrator, which must be construed against Samsung as the drafter of the agreement. *327 Realty, LLC v. Nextel of New York, Inc.*, 150 A.D.3d 581, 582 (N.Y App. Div. 1st Dep't 2017) ("To the extent there may be ambiguity, it is properly construed against the

6

drafter."). Therefore, the Court (not an arbitrator) must determine whether Plaintiffs' claims fall within the scope of Defendant's agreement.

## II. PLAINTIFFS' CLAIMS SHOULD NOT BE COMPELLED TO ARBITRATION BECAUSE THEIR CLAIMS ARISE OUT OF, ARE RELATED TO, AND ARE CONNECTED TO THE TELEVISIONS' HARDWARE AND REPRESENTATIONS MADE ON THE LABELING AND PACKAGING

Defendant asserts that "Plaintiffs' claims plainly fall within the scope of the Agreement." Mtn. at 15. Defendant is wrong. As noted above, the arbitration clause states that "any claim, dispute or controversy … the User may have against any Samsung entity … arising out of, relating to, or connected in any way with the Services … will be resolved exclusively by final and binding arbitration." Abuali Decl. Ex. A § 14.8; Abuali Decl. Ex. B § 14.8. The agreement defines "Services" as, among other things, "Samsung's … software … [and] services." Abuali Decl. Ex. A § 1.1(b), Abuali Decl. Ex. B § 1.1(b). But Plaintiffs' claims neither arise out of nor relate to nor are connected with Samsung's "software" or "services." Instead, Plaintiffs' claims solely relate to Samsung's misrepresentations about the Televisions' *hardware* (*i.e.*, the display of the Televisions, the internal chips that allow the Televisions to generate the refresh rate). FAC ¶ 2; *see also id.* ¶¶ 14-19 (explaining how refresh rate works). Specifically, Plaintiffs allege that Samsung represents "the Televisions' hardware is capable of producing a refresh rate of 120 Hz" when in fact the "Televisions' hardware is only capable of producing an actual refresh rate of only 60 Hz." *Id.* ¶¶ 2-3. And the refresh rate is entirely a product of the Televisions' hardware: "[T]he hardware is capable of pulling a limited number of frames, per second, from the video source – whether 60 Hz, 120 Hz, or otherwise. This is determined by the hardware." *Id.* ¶ 19. Thus, because Plaintiffs' claims solely relate to and are connected with the Television's hardware and not software or services, Plaintiffs' claims cannot be compelled to arbitration. *Dedon GmbH v. Janus et Cie*, 411 F. App'x 361, 364 (2d Cir. 2011) ("Janus would

7

thus have this court find that '*any* dispute related to *any* obligation arising prior to or outside of the contract formed by each shipment of goods' is governed by the purchase orders' terms and conditions. … We decline to adopt Janus's broad reading of that contractual language, as it ignores the plain language of the purchase order.") (emphasis in original); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28 (2d Cir. 1995) (defamation case was outside the scope of arbitration agreement, even though the agreement covered "any controversy or claim arising under or relating to the contract," because it involved allegations of dishonesty and incompetence by the defendant, whereas the agreement was part of a dyeing and finishing contract).

Further, to the extent there is any ambiguity as to whether the arbitration clause covers claims related to the Televisions' hardware (and it does not), that ambiguity must be construed against Samsung as the drafter of the agreement. *327 Realty, LLC v. Nextel of New York, Inc.*, 150 A.D.3d 581, 582 (N.Y App. Div. 1st Dep't 2017). Accordingly, if there is ambiguity, the Court must find that Plaintiffs' claims are not covered by the arbitration clause.

Defendant's counterarguments are unavailing. *First*, Samsung asserts that the amended complaint attempts to skirt around a "dispositive defense" by deleting references to the motion rate software. Mtn. at 16. Plaintiffs have done no such thing. Plaintiffs have merely clarified in their FAC that the claims at issue here arise from misrepresentations about hardware, and the refresh rate of a television is the sole product of a television's hardware. That is not inconsistent with Plaintiffs' prior pleading, which did not explicitly state as such.

In any event, Judge Buchwald has rejected the exact type of argument Defendant makes here:

> It is not uncommon for litigants to amend pleadings in response to deficiencies pointed out by an adversary or even by the Court, either before a dispositive motion is filed or in response to a ruling on a motion that grants leave to replead and offers specific

8

> guidance as to how any flaws in the pleadings may be cured to survive dismissal. Some such corrective amendments serve a useful purpose in avoiding unnecessary motion practice. Not surprisingly, some later pleadings made in this context necessarily may be at odds with allegations the party asserted in the original pleadings. *It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the Court, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleadings.*

*Streit v. Bushnell*, 424 F. Supp. 2d 633, 640 n.4 (S.D.N.Y. 2006). Indeed, Judge Buchwald stated Defendant's argument is contrary to Fed. R. Civ. P. 8(e), which "explicitly permits litigants, even within the same pleadings, to state as many separate claims or defenses as the party has regardless of consistency." *Id.* (internal quotations omitted). And in other contexts, such as removal to federal court, it is "appropriate for a plaintiff to strategically plead in order to avoid removal to federal court in the first instance." *Cavanagh v. Columbia Sussex Corp.*, 2021 WL 4356042, at *2 (E.D.N.Y. Sept. 24, 2021) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)); *see also Cleanup North Brooklyn v. Brooklyn Transfer LLC*, 2018 WL 1981387, at *3 (E.D.N.Y. Apr. 27, 2018) ("The plaintiffs are the masters of their Complaint").[2]

*Second*, Samsung contends that "Plaintiffs' Amended Complaint only confirms that their claims relate to" software because "Samsung advertised the frame rate of Plaintiffs' televisions using a software-enabled rate instead of a hardware-enabled rate." Mtn. at 17. Not so. Plaintiffs allege that Samsung's representations led consumers to believe "the Televisions' *hardware* is capable of producing a refresh rate of 120 Hz." FAC ¶ 2 (emphasis added). Whether Samsung claims the statistic was justified by software is a question of fact and is also not a dispute raised

---

[2] Defendant's authorities on this topic are distinguishable. In *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), the court disregarded inconsistent allegations where the plaintiff first alleged he was an "attorney," and then alleged on amendment that he was a "specialist." No such inconsistency exists here. And in *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 190 n.18 (S.D.N.Y. 2018), the plaintiff had previously "conceded" facts, and sought to plead around them by "omitting them from an amended complaint." Plaintiffs have made no such concessions here.

by the "user," which is what the arbitration clause focuses on.  Samsung cannot compel Plaintiffs' claims to arbitration by inventing its own disputes.

*Third*, Samsung further contends that "the Amended Complaint still cites and relies on multiple articles that state that the motion rate statistic is software-based."  Mtn. at 17.  However, this is merely background or contextual information used to show how Samsung attempts to justify its "motion rate" statistic, and therefore does not factor in to whether Plaintiffs' claims are arbitrable.  *QED Holdings, LLC v. Block*, 2015 WL 12659935, at *7 (C.D Cal. June 11, 2015) ("[W]hile the Court must examine the factual allegations rather than the legal causes of action asserted to determine whether a claim falls within the scope of the arbitration provision, Plaintiff's Lanham Act claims need not be submitted to arbitration simply because some facts relating to the Employment Agreement are also relevant to provide context for the Lanham Act claims.").  Indeed, nothing about these techniques is necessary for Plaintiffs to state a claim.  The allegations that Samsung represents the Televisions as having a framerate of 120 Hz—but the hardware is only capable of producing a refresh rate of 60 Hz—are all that Plaintiffs need to plead to state a claim.

Accordingly, because the claim relates only to the hardware, the mere mention of "software" in the Complaint, for background and explanatory purposes, is not a sufficient basis for Samsung to compel arbitration.  *See Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183 (2d Cir. 2021) (finding claims did not fall within scope of arbitration clause where "none of the facts relevant to the merits of Cooper's claims against Ruane relates to his employment"); *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017) (same where "this FCA suit has no direct connection with Welch's employment because even if Welch had never been employed by defendants, assuming other conditions were met, she would still be able to bring a suit against them for presenting false claims to the

government") (internal quotations omitted) (citing *Jones v. Halliburton Co.*, 583 F.3d 228, 240 (5th Cir. 2009)); *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere.") (internal quotations omitted).

*Finally*, Samsung contends "Plaintiffs also agreed that they would not bring any claims as part of a class action." Mtn. at 19. But by its plain terms, the class action waiver is only limited to disputes brought in arbitration. Abuali Decl. Ex. A § 14.8 ("[T]here shall be no authority for any claims *to be arbitrated* on a class or representative basis.") (emphasis added); Abuali Decl. Ex. B § 14.8 (same). But Plaintiffs' claims do not belong in arbitration. The class action waiver is limited to disputes in arbitration, and as such Plaintiffs are free to pursue classwide relief in federal court. Further, even if the class action waiver was independent of the arbitration clause (it is not), it would be unconscionable because it is not tethered to the arbitration clause.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated: September 16, 2022       Respectfully submitted,

                                **BURSOR & FISHER, P.A.**

                                By: */s/ Frederick J. Klorczyk III*
                                    Frederick J. Klorczyk III

                                Frederick J. Klorczyk III
                                Max S. Roberts
                                888 Seventh Avenue
                                New York, NY 10019
                                Telephone: (646) 837-7150
                                Facsimile: (212) 989-9163
                                Email: fklorczyk@bursor.com
                                       mroberts@bursor.com

                                **BURSOR & FISHER, P.A.**
                                Neal J. Deckant

11

        1990 N. California Boulevard, Suite 940
        Walnut Creek, CA  94596
        Telephone:  (925) 300-4455
        Facsimile:  (925) 407-2700
        Email:  ndeckant@bursor.com

*Attorneys for Plaintiffs*