USDC SONY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/26/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
SONYA HAYTHE, DOUGLAS SMITH, and :
PETER COFFIN, individually and on behalf of all :
others similarly situated, :
                                                      Plaintiffs, :     22-CV-3509 (VEC)
                  -against- :
                                :     OPINION AND ORDER
SAMSUNG ELECTRONICS AMERICA, INC., :
                             Defendant. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Plaintiffs are suing Samsung Electronics America, Inc. ("Samsung" or "Defendant") for allegedly misrepresenting the capabilities of certain Samsung televisions that Plaintiffs purchased.[1] *See* Am. Compl., Dkt. 29. Defendant has moved to compel arbitration. *See* Notice of Mot., Dkt. 30.

      For the following reasons, the motion is GRANTED, and the case is STAYED pending arbitration.

---

[1] Plaintiffs bring claims for violation of the New York General Business Law, N.Y. Gen. Bus. Law §§ 349–350 (McKinney 2023); violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 to -227 (West 2023); breach of express warranty; violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312; unjust enrichment; fraud; and violation of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws ch. 93A (2023). *See* Am. Compl., Dkt. 29.

## BACKGROUND[2]

On April 29, 2022, Sonya Haythe, Douglas Smith, and Peter Coffin ("Plaintiffs") brought a putative class action against Samsung for allegedly misrepresenting the capabilities of certain Samsung televisions Plaintiffs had purchased. *See* Compl., Dkt. 1; Am. Compl.

Upon purchasing the televisions in 2020 and 2021, Plaintiffs agreed to Samsung's terms and conditions (the "Terms and Conditions"), including the following arbitration clause (the "Arbitration Clause"):

> By using the Services[3], the User[4] unconditionally consents and agrees that: (a) any claim, dispute or controversy (whether in contract, tort, or otherwise) the User may have against any Samsung entity, the officers, directors, agents and employees of any Samsung entity (the "Samsung Entity(ies)") arising out of, relating to, or connected in any way with the Services or the determination of the scope or applicability of this clause, will be resolved exclusively by final and binding arbitration administered by the International Chamber of Commerce ("ICC") and conducted before a sole arbitrator in accordance with the rules of the ICC; (b) this clause is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 . . . .

*See* Abuali Decl., Dkt. 32, ¶¶ 4–17; 2020 Terms and Conditions, Dkt. 32-1, §14.8; 2021 Terms and Conditions, Dkts. 32-2, §14.8.

---

[2] When deciding a motion to compel arbitration, courts typically apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). If "undisputed facts in the record require[] the issue of arbitrability to be resolved against Plaintiffs as a matter of law," the motion to compel arbitration must be granted. *Id.* If, however, Plaintiffs can show that "there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4). The parties do not dispute that they entered into the enforceable arbitration agreements attached to Defendant's motion, and neither side asserts that an issue of fact precludes resolving the motion. *See generally* Pls. Mem., Dkt. 34. The Court therefore assumes the facts set forth in the declarations in support of Defendant's motion for the purposes of this decision.

[3] "Services" include Samsung's "productions, application, software, information offering services, services, websites and other related services provided by [Samsung] or any third party designated by [Samsung] through or in connection with [the] device . . . ." *See* 2020 Terms and Conditions, Dkt. 32-1, § 1.1(b); 2021 Terms and Conditions, Dkts. 32-2, § 1.1(b).

[4] "User" means "a user of Samsung's Services." *See* 2020 Terms and Conditions § 1.1(c); 2021 Terms and Conditions § 1.1(c).

Samsung first moved to compel arbitration on July 13, 2022. *See* Dkt. 20. On August 4, 2022, the Court denied the motion without prejudice in light of Plaintiffs' Amended Complaint. *See* Order, Dkt. 28. Samsung renewed its motion on September 9, 2022. *See* Notice of Mot.

## DISCUSSION

### I.  Legal Standard

Pursuant to Section 2 of the Federal Arbitration Act (the "FAA"), "agreements to arbitrate [are] 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). Because of the "emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

The threshold question in the face of a motion to compel arbitration is whether there is an arbitration agreement between the parties. That question is governed by state contract law. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017). If an arbitration agreement exists, the court must also determine "whether the dispute falls within the scope of the arbitration agreement." *Meyer*, 868 F.3d at 74. In light of the "liberal federal policy favoring arbitration agreements . . . arbitration agreements should be enforced according to their terms unless the FAA's mandate has been overridden by a contrary congressional command." *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295 (2d Cir. 2013) (cleaned up).

An agreement to arbitrate arbitrability is "an additional, antecedent agreement" that is also covered by the FAA. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)). Unlike other agreements to arbitrate, for which there is a presumption in favor of arbitration, "the law reverses

the presumption" for agreements to arbitrate arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995); *see also Contec Corp. v. Remote Sol. Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005). Accordingly, "the issue of arbitrability may only be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Contec Corp.*, 398 F.3d at 208 (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)) (emphasis omitted).

The rules of the International Chamber of Commerce (the "ICC") assign the arbitrator initial responsibility to determine issues of arbitrability. *See Shaw Grp. Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 124–25 (2d Cir. 2003); Int'l Chamber of Com., 2021 Arb. Rules art. 6.5 (2021), https://iccwbo.org/dispute-resolution/dispute-resolution-services/arbitration/rules-procedure/2021-arbitration-rules/ ("[A]ny decision as to the jurisdiction of the arbitral tribunal . . . shall be taken by the arbitral tribunal itself.").

    **II.**    **There is Clear and Unmistakable Evidence That the Parties Consented to Arbitrate Questions of Arbitrability**

Although Plaintiffs argue that the motion should be denied because their dispute with Samsung is not within the scope of the Arbitration Clause, the parties clearly consented to arbitrate questions of arbitrability. The Arbitration Clause expressly gives the arbitrator exclusive authority to determine the scope and applicability of the Clause and it incorporates by reference the ICC's rules.

The Arbitration Clause provides in relevant part that "any claim, dispute or controversy" that a "User" may have against Samsung "arising out of, relating to, or connected in any way with . . . the determination of the scope or applicability of this clause, will be resolved

exclusively by final and binding arbitration . . . ."[5]  *See* 2020 Terms and Conditions §14.8; 2021 Terms and Conditions §14.8.  The Arbitration Clause's "scope or applicability" is, therefore, expressly within the arbitrator's purview.  *See Sinavsky v. NBCUniversal Media, LLC*, No. 20-CV-9175 (JPC), 2021 WL 4151013, at *5–6 (S.D.N.Y. Sept. 13, 2021) (concluding that an arbitration agreement clearly and unmistakably assigned issues of arbitrability to the arbitrator because the agreement gave the arbitrator "exclusive authority to resolve any dispute relating to the applicability, interpretation, formation, or enforceability" of the contract); *Washington v. William Morris Endeavor Ent., LLC*, No. 10-CV-9647 (PKV), 2011 WL 3251504, at *6 (S.D.N.Y. July 20, 2011) (reaching the same conclusion because the agreement "expressly provide[d] that the arbitrator 'shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement'").[6]

This interpretation of the Arbitration Clause is reinforced by its incorporation of ICC rules, which assign the arbitrator initial responsibility to determine issues of arbitrability.  *See* 2020 Terms and Conditions §14.8; 2021 Terms and Conditions §14.8 (stating that arbitration

---

[5]  The parties assume that New York law governs the Arbitration Clause's interpretation.  The Court therefore does the same.  *See Washington v. William Morris Endeavor Ent., LLC*, No. 10-CV-9647 (PKC), 2011 WL 3251504, at *6 n.3 (S.D.N.Y. July 20, 2011).

[6]  Plaintiffs insist that the Arbitration Clause's scope should be decided by this Court because the clause only delegates any dispute to an arbitrator if "the User" (meaning Plaintiffs) has raised it; here, only Defendant is invoking the provision.  *See* Pls. Mem. at 6.  That argument fails on several grounds.  First, as a matter of plain text, the Arbitration Clause delegates "any claim, dispute or controversy . . . the User may have . . . arising out of, relating to, or connected in any way with . . . the determination of the scope or applicability of this clause" to arbitration.  *See* 2020 Terms and Conditions §14.8; 2021 Terms and Conditions §14.8.  Plaintiffs' underlying claims against Samsung gave rise to and are, therefore, undoubtedly "connected in [some] way with" the present dispute surrounding the applicability of the Arbitration Clause; concluding otherwise would defy the plain meaning of the Arbitration Clause.  *See Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir. 2002) ("Where the contract is unambiguous, courts must effectuate its plain language." (citing *Slamow v. Del Col*, 594 N.E.2d 918, 919 (N.Y. 1992)).  Second, adopting Plaintiffs' interpretation of the Arbitration Clause would lead to the absurd result that a Samsung customer could avoid mandatory arbitration by choosing not to raise the issue in Court.  That would fly in the face of both New York contract law, *see Icahn v. Todtman, Nachamie, Spizz & Johns, P.C.*, No. 99-CV-11783 (JCF), 2002 WL 362788, at *3 (S.D.N.Y. Mar. 6, 2002) ("A contract must be construed, if possible, to avoid an interpretation that will result in an absurdity, an injustice or have an inequitable or unusual result." (internal quotation marks and citation omitted and collecting cases)), and the vast body of federal law favoring arbitration, *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

will be "administered by [the ICC]" and conducted "before a sole arbitrator in accordance with the rules of the ICC"); 2021 Arb. Rules art. 6.5.  It is well established that an arbitration clause "subjecting disputes to the rules and procedures of the ICC" is clear and unmistakable evidence that the parties intended to arbitrate the arbitrability of particular disputes.  *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 326 (2d Cir. 2013) (citing *Shaw*, 322 F.3d at 122).[7]

For all of those reasons, there is clear and unmistakable evidence that the parties agreed to arbitrate questions of arbitrability.[8]

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration and to stay this case is GRANTED.  This action is STAYED pending the conclusion of arbitration.  *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").  The parties must submit a joint update on the status of arbitration every six months, on the first of that month, or if the first falls on a weekend or holiday, on the first business day thereafter.  The first report is due on **December 1, 2023**.

The Clerk of Court is respectfully directed to close the open motion at Docket Entry 30 and to stay the case.

**SO ORDERED.**

**Date: June 26, 2023**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[7] Plaintiffs appear to have conceded this point.  *See generally* Pls. Mem.; *CVS Pharmacy, Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 383 (S.D.N.Y. 2019) ("[A] party may be deemed to have conceded an argument by failing to address it in its briefing.").

[8] Because the Court concludes that questions of arbitrability are within the arbitrator's purview, it does not decide whether the claims at issue fall within the Arbitration Clause's scope.